IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 JUN 25  AM 8: 45
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

MONTGOMERY C. GREEN, JR.,
         Plaintiff,

-vs-                                          Case No. A-12-CA-1048-SS

KEYCORP,
         Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Montgomery C. Green, Jr.'s Sealed [#54] and Redacted Motions for Summary Judgment [#61], Defendant KeyCorp's Sealed Response [#65], and Green's Sealed Reply [#70]; and KeyCorp's "Renewed Motion for Leave to File Amended Answer *Instanter* and to Compel or Permit Joinder of Necessary Party" [#55], Green's Response [#59], and KeyCorp's Reply [#63]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING KeyCorp's renewed motion and DENYING Green's motion for summary judgment.

### Background

This breach-of-contract case arises from KeyCorp's acquisition of Austin Capital Management, Ltd. (ACM), an investment firm which manages "funds of hedge funds." The Purchase and Sale Agreement (PSA) governing the acquisition split the purchase price into two segments. One portion of the purchase price would be paid up-front by KeyCorp at the time of the closing of the sale. A second portion, referred to as the Back-end Payment, was due following the five-year

anniversary of the closing. The size of the Back-end Payment would be determined by a number of performance-related variables (such as net revenue) tracked across the five-year "Measurement Period" between the closing and the final payout. A portion of the Back-end Payment, dubbed the "Special Compensation Bonus Pool," was earmarked for a designated set of ACM employees, including one of ACM's managers, Green, and ACM's Chief Operating Officer, David Friedman. The size of this pool was also tied to ACM's performance, and the right of each designated employee to collect was further conditioned on the employee meeting certain criteria. KeyCorp's refusal to pay the Special Compensation Bonus Pool brought this lawsuit by Green (and a separate, later-filed lawsuit by Friedman).

The KeyCorp–ACM deal closed on April 1, 2006. Over the next two years, ACM enjoyed great success and substantially grew its assets under management. In December 2008, ACM disclosed it had invested approximately 7.5% of its assets in a fund which was itself a part of the now-infamous Bernard Madoff ponzi scheme. This fund lost all of its assets as a result of Madoff's fraud. This revelation destroyed the confidence of ACM's investor clients, who rapidly moved to redeem their investments. ACM responded by offering its investors a choice: lock their investments in for a one-year period in exchange for a discounted management fee, or redeem their interests in full. A substantial portion of ACM's investors chose the latter option.[1] In response, in April 2009, KeyCorp and ACM decided to liquidate ACM's assets, return everything possible to investors, and wind down the business.

KeyCorp contends the Madoff investment and its fallout excused KeyCorp from paying the Back-end Payment, including the Special Compensation Bonus Pool. In particular, KeyCorp relies

---

[1] The precise figures are contained in the parties' sealed briefs, but have been designated confidential.

on section 2.5(e) of the PSA, which reads:

> (e) The Buyer [KeyCorp]'s obligation to pay any Contingent Consideration or any amounts from the Special Compensation Bonus Pool shall, in each case, be subject to the conditions that (i) the Closing shall have occurred and (ii) no event shall have occurred or circumstances exist during the final twelve months of the Measurement Period that has had, or is reasonably likely to result in, a Material Adverse Effect.

Pl.'s App'x [#52], at A14 (PSA § 2.5(e)). Green disagrees and has moved for summary judgment, arguing the proper interpretation of section 2.5(e) establishes KeyCorp was not excused from making the payment and Green, as the sole eligible designated employee, is entitled to the entire Special Compensation Bonus Pool.

Some eighteen months after Green filed his lawsuit, Friedman filed a lawsuit of his own against KeyCorp. *See Friedman v. KeyCorp*, No. 1:14-CV-482-SS (W.D. Tex. filed May 23, 2014). Friedman alleges he, too, is entitled to a portion of the Special Compensation Bonus Pool, and KeyCorp is not excused from paying him his due. Following KeyCorp's deposition of Friedman, in which he confirmed his belief he has a claim to a portion of the Special Compensation Bonus Pool, KeyCorp renewed its motion to join Friedman as a necessary party to this lawsuit in order to avoid the possibility of inconsistent or multiple obligations should both cases result in favorable judgments for the former ACM employees.

## Analysis

### I.    Renewed Motion to Join Friedman

KeyCorp has renewed its motion to compel the joinder of Friedman under Federal Rule of Civil Procedure 19. The rule requires the joinder of a person if that person "claims an interest relating to the subject of the action" and their absence would "leave an existing party subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1)(B)(ii). Since the filing of KeyCorp's initial motion, Friedman has initiated his separate lawsuit against KeyCorp, in which Friedman claims an interest in the Special Compensation Bonus Pool. Friedman's suit fairly establishes the existence of Friedman's claim and the risk of inconsistent or duplicative judgments. Rather than preside over two related lawsuits by similarly (though not necessarily identically) situated plaintiffs against the same defendant arising out of the same transaction, the Court finds consolidation of these two cases to be the preferable outcome. *See Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984) (district courts have authority to consolidate similar cases under Federal Rule of Civil Procedure 42(a) *sua sponte*).

Accordingly, Friedman's action against KeyCorp in cause number 1:14-CV-482-SS is hereby CONSOLIDATED with this case, to proceed jointly as cause number 1:12-CV-1048-SS. All future filings should be made in this cause number. The scheduling order currently in place [#31] shall remain in effect following the consolidation, and trial remains set for January 2015.

## II.     Green's Motion for Summary Judgment

### A.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences

drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

B.   **Application**

The parties' dispute focuses on their competing interpretations of section 2.5(e) of the PSA. Within that fairly dense paragraph, the parties disagree over multiple terms and phrases. Each side insists the contract is unambiguous and its reading is the only reading consistent with the plain language of the contract.

Once again, section 2.5(e) reads, in its entirety:

> (e) The Buyer's obligation to pay any Contingent Consideration or any amounts from the Special Compensation Bonus Pool shall, in each case, be subject to the conditions that (i) the Closing shall have occurred and (ii) no event shall have occurred or circumstances exist during the final twelve months of the Measurement Period that has had, or is reasonably likely to result in, a Material Adverse Effect.

Pl.'s App'x, at A14 (PSA § 2.5(e)). The final phrase, Material Adverse Effect (MAE), is also a defined term. The PSA defines it as:

> an event or events, whether individually or taken together, which have a material adverse effect upon or which the cumulative effect of which is to have a material adverse effect upon the business, operations, asserts or financial condition of the Companies taken as a whole; provided, however, that Material Adverse Effect shall exclude any change or effect due to general economic, securities markets or hedge fund industry-wide conditions.

*Id.*, at A67 (PSA App'x, at A-4).

Section 2.5(e) thus contemplates several scenarios in which KeyCorp's payment of the Back-end Payment (the "Contingent Consideration" and the Special Compensation Bonus Pool) will be excused. As romanette (i) provides, if the deal does not close, KeyCorp does not have to pay. Romanette (ii) provides additional escape valves in the form of both "events" and "circumstances," neither of which are defined terms.

The parties disagree over several aspects of romanette (ii), but the primary debate is whether the limiting phrase "during the final twelve months of the Measurement Period" modifies both the "event" clause and the "circumstances" clause, or only the "circumstances" clause. Green takes the former position, advancing the theory romanette (ii) relates only to things which happen in the final year of the Measurement Period. According to Green, because it is undisputed no MAE-inducing event occurred in the last year, payment is only excused if circumstances existed during the final year which were reasonably likely to result in an MAE in the future. KeyCorp takes the latter position, arguing an MAE-inducing event *at any time* during the Measurement Period excuses payment. KeyCorp identifies the Madoff revelation as a qualifying event within the Measurement Period. Alternatively, KeyCorp contends the effects of the Madoff scandal—in other words, the circumstances arising from that event—continued to be felt in the final year of the Measurement Period, and thus excused payment.

i.  **Principles of Contract Interpretation**

The parties agree Ohio law governs the construction and interpretation of the PSA. Under Ohio law, contract interpretation is a matter of law. *Latina v. Woodpath Dev. Co.*, 567 N.E.2d 262, 264 (Ohio 1991). The role of the court in interpreting a contract is "to give effect to the intent of the parties," which is presumably "reflected in the language of the contract." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). Contract terms are to be construed according to their "plain and ordinary meaning . . . unless another meaning is clearly apparent from the contents of the agreement." *Id.* "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *see also Blue Cross & Blue Shield Mut. of Ohio v. Hrenko*, 647 N.E.2d 1358, 1360 (Ohio 1995). "It is

generally the role of the finder of fact to resolve ambiguity." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003); *see also Amstutz v. Prudential Ins. Co. of Am.*, 26 N.E.2d 454, 456 (Ohio 1940) ("While it is the function of a court to construe a contract, it is the province of the jury to ascertain and determine the intent and meaning of the contracting parties in the use of uncertain or ambiguous language.").

### ii.     The "Event" Clause

There is no dispute the limiting phrase "during the final twelve months of the Measurement Period" modifies the phrase "circumstances exist." The Court finds the PSA is ambiguous as to whether that limiting phrase also modifies the phrase "no event shall have occurred." As a matter of syntax, romanette (ii) is reasonably susceptible to both interpretations. In fact, KeyCorp itself has advanced both sides of the argument in litigation involving the PSA. In this case, it contends the limiting phrase modifies only "circumstances," but in prior litigation contended the limiting phrase modified both "event" and "circumstances." Pl.'s App'x, at A243 (KeyCorp interrogatory responses in *Riley v. KeyCorp*, No. 1:11-CV-1150 (N.D. Ohio Apr. 30, 2011)) ("KeyCorp further states that the phrase 'during the final twelve months of the Measurement Period' modifies the phrase 'no event shall have occurred or circumstances exist.'").[2]

Green argues section 6.9 of the PSA indicates the limiting phrase must apply to the "event" clause as well as the "circumstances" clause. Section 6.9 required KeyCorp to purchase ACM only if, at or prior to the closing, "No event shall have occurred or circumstances exist that has had, or

---

[2] Green's briefing suggests on multiple occasions KeyCorp should be estopped from arguing the limiting phrase only modifies the "circumstances" clause based on its prior position in the *Riley* case. Because the record before the Court contains no evidence KeyCorp persuaded the *Riley* court to accept its proffered interpretation there, judicial estoppel is unavailable. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (judicial estoppel requires showing the party to be estopped previously convinced another court to accept a position which is clearly inconsistent with its current position).

is reasonably likely to result in, a Material Adverse Effect." Pl.'s App'x, at 43–44 (PSA § 6.9). Green reads section 6.9 as allowing for KeyCorp to cancel the acquisition if an MAE-inducing event occurred "at *any time*" prior to closing. Pl.'s Mot. Summ. J. [#61], at 14. The Court agrees with that reading, but it sheds no light on the ambiguity present in section 2.5(e). Based on the plain language of the contract, the parties could have intended to capture MAE-inducing events which occurred "at any time"—a phrase not found in either section 2.5(e) or section 6.9—and further restricted only the "circumstances" clause to the final year of the Measurement Period.[3]

Green next argues the limiting phrase must modify the "event" clause in order to give it any meaning. According to Green, "if circumstances existed at some time during the Final Year but did not exist at the end of the Final Year, then there would not be any circumstances 'reasonably likely to result in a Material Adverse Effect.'" *Id.* Not so. The plain language of section 2.5(e) excuses KeyCorp from making the Back-end Payment if "circumstances exist during the final twelve months of the Measurement Period that ha[ve] had, or [are] reasonably likely to result in, a Material Adverse Effect." PSA § 2.5(e). The circumstances are not required to exist at the *end* of the Measurement Period, but only "during the final twelve months" of the period. Green's interpretation would read limitations not present on the face of the PSA into its terms.

Although none of Green's arguments are particularly informative as to the parties' intent with respect to section 2.5(e)'s limiting phrase, KeyCorp's argument fares no better. KeyCorp relies exclusively on the "'rule of the last antecedent,' under which 'a limiting clause or phrase . . . should

---

[3] Similarly, the fact the PSA adjusted the size of the Back-end Payment based on ACM's performance does not inform whether section 2.5(e)'s limiting phrase applies to the "event" clause. One plausible reading of the plain language of section 2.5(e) suggests KeyCorp would be excused from making the Back-end Payment if an MAE-inducing event occurred during the Measurement Period, regardless of whether ACM's performance had reduced the size of the payment in other ways.

ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *United States v. Hayes*, 555 U.S. 415, 425 (2009) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). Although the rule is primarily one of statutory construction, it has been applied to contracts as well. *See, e.g., Brush Wellman, Inc. v. Montes*, 295 F. Supp. 2d 785, 795–96 (N.D. Ohio 2003) (applying the rule to construction of contractual documents). Applying this rule, KeyCorp argues the limiting phrase should be read to modify only the "last antecedent," the "circumstances" clause, and not the "event" clause.

The United States Supreme Court has recognized the rule of the last antecedent "is not absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 380. Here, nothing in the plain language of the PSA suggests the last antecedent should be the "circumstances" clause as opposed to the *entire preceding phrase*. In other words, the last antecedent could well be the entire phrase "no event shall have occurred or circumstances exist," rather than just the final two words. *See Indep. Ins. Agents of Ohio, Inc. v. Fabe*, 587 N.E.2d 814, 817 (Ohio 1992) (applying the rule of the last antecedent and holding the phrase "directly or indirectly" modified the entire antecedent phrase "solicit, place or effect such insurance"). The rule is also counterbalanced by another canon of statutory construction: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014) (internal quotation marks omitted). Here, it is ambiguous whether the limiting phrase

in romanette (ii) is intended to apply to both the "event" and "circumstances" clauses, or only the "circumstances" clause. The plain language of the contract sheds little light on the parties' intent.[4]

KeyCorp's response includes a declaration from Daniel Stolzer, a former in-house attorney at KeyCorp who helped negotiate the terms of the PSA. Although KeyCorp does not cite to Stolzer's declaration in its argument with respect to the "event" clause, KeyCorp elsewhere relies on Stolzer's declaration to establish the parties' intent in drafting certain sections of the PSA, including section 2.5(e). Parol evidence of the parties' intent may be relevant to resolving ambiguities in contracts. *See Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992); *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 274 (Ohio 1984). But KeyCorp has not moved for summary judgment in its favor, and the Court need not resolve the construction dispute to deny Green's motion. It is sufficient to hold KeyCorp has shown the existence of a genuine dispute as to the parties' intent in including the limiting phrase in romanette (ii) of section 2.5(e) of the PSA. Accordingly, summary judgment in favor of Green is inappropriate.

### iii.   The "Circumstances" Clause

Alternatively, and regardless of the outcome of the "event" clause dispute, the parties agree the limiting phrase still applies to the "circumstances" clause. But the parties join issue again with

---

[4] Notably, KeyCorp's proffered interpretation of the statute following application of the rule of the last antecedent would lead to absurd results. KeyCorp's suggested "correct interpretation" does not carry the leading "no" in romanette (ii) through to the "circumstances" clause, resulting in a construction of the PSA that obligates KeyCorp to make the Back-end Payment when either "[ii](a) no event shall have occurred or (b) circumstances exist during the final twelve months of the Measurement Period [iii] that has had, or is reasonably likely to result in, a Material Adverse Effect." Defs.' Resp. [#66], at 17. Nothing suggests the parties intended to require KeyCorp to make the Back-end Payment if circumstances existed in the final year which were reasonably likely to result in an MAE. It appears KeyCorp's actual proffered interpretation would track this construction but insert an additional "no" following (b). It is also apparent the use of the "or" in KeyCorp's redrafting is effectively an "and," requiring payment only when "no event" occurred and "no circumstances exist[ed]."

respect to whether any circumstances existed in the final year of the Measurement Period which excused KeyCorp's payment.

Green takes the position circumstances are only relevant insofar as they "are reasonably likely to result in" an MAE. Because the PSA defines an MAE as an "event or events," Green contends payment is only excused if circumstances exist during the final year of the Measurement Period which are reasonably likely to result in the occurrence of an MAE-inducing event in the future. KeyCorp argues the circumstances flowing from the Madoff scandal were circumstances existing during the final year of the Measurement Period which "ha[d] had . . . a Material Adverse Effect" on the value of ACM. In other words, KeyCorp contends the effects of the MAE-inducing events in late 2008 and early 2009 carried over into the final year of the Measurement Period in the form of reduced investor confidence and unwillingness to invest with ACM, thus devaluing the company in a material way.

The trouble here stems from the PSA's definition of an MAE. The PSA does, as Green notes, define a "Material Adverse Effect" as "an event or events which have a material adverse effect upon . . . the business, operations, assets[,] or financial condition of the Companies taken as a whole." PSA App'x, at A-4. This circular definition is wholly unhelpful. First, it uses the term to be defined in the definition: an MAE is an event which has an MAE. This tautological reduction renders the definition largely meaningless. Second, it defines an MAE as an event, which leads to this absurd construction if one substitutes the definition of MAE into section 2.5(e):

> (e) The Buyer's obligation to pay . . . shall . . . be subject to the conditions that . . . no event shall have occurred . . . that has had . . . an event or events which have a material adverse effect upon . . . the business, operations, assets[,] or financial condition of the Companies taken as a whole.

The Court therefore reads the definition of Material Adverse Effect in a way which gives effect to the parties' clear intentions without leading to absurd results. The parties plainly agreed an MAE was something which negatively impacted the business, with the magnitude of the impact left open to interpretation. An *effect* is plainly not an *event*; the plain language of section 2.5(e) speaks of events *having* effects, not the linguistic impossibility of events having events.

Armed with this practical interpretation of an MAE, KeyCorp's argument is persuasive. Section 2.5(e) speaks of circumstances which "ha[ve] had" an MAE, or "[are] reasonably likely to result in" an MAE. Green's interpretation excludes the former possibility, reading the "has had" (or "ha[ve] had") clause as applying only to the "event" clause. Once again, nothing in the plain language suggests "has had" was meant to apply only to events, or that the "reasonably likely" clause was only intended to apply to circumstances. What about an event which had occurred but had not yet had an MAE, but was reasonably likely to have an MAE in the future? Here, Green's invocation of *Paroline* comes home to roost. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline*, 134 S. Ct. at 1721 (internal quotation marks omitted). The "has had" and "reasonably likely" clauses are both applicable as much to the "event" clause as to the "circumstances" clause. Because Green's interpretation restricts those clauses without justification either elsewhere in the PSA or from outside evidence of the parties' intent, it cannot be correct.

Green has thus failed to show he is entitled to judgment as a matter of law based on the "circumstances" clause.

iv.  **Damages**

Finally, Green contends he has proven himself entitled to the entire amount of the Special Compensation Bonus Pool. Even if the Court agreed Green was otherwise entitled to judgment in his favor, the Court would not enter summary judgment at this stage because there is now another claimant to at least a portion of that pool present in this case. Friedman has not yet had an opportunity to prove the merits of his claim to the bonus pool, and thus an entry of judgment awarding the entire to pool to Green at this time would be premature.

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiff Montgomery C. Green, Jr.'s Sealed [#54] and Redacted Motions for Summary Judgment [#61] are DENIED;

IT IS FURTHER ORDERED that Defendant KeyCorp's "Renewed Motion for Leave to File Amended Answer *Instanter* and to Compel or Permit Joinder of Necessary Party" [#55] is GRANTED;

IT IS FINALLY ORDERED that David Friedman's action against KeyCorp in cause number 1:14-CV-482-SS is hereby CONSOLIDATED with this case, to proceed jointly as cause number 1:12-CV-1048-SS. A separate order of consolidation will be entered in Friedman's cause number.

SIGNED this the 24th day of June 2014.

SAM SPARKS
UNITED STATES DISTRICT JUDGE